UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| METZ CULINARY MANAGEMENT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>OAS, LLC,<br><br>Defendant. | CIVIL ACTION NO. 3:21-CV-01023<br><br>(MEHALCHICK, M.J.) |

**MEMORANDUM**

On October 27, 2022, counsel for Defendant OAS, LLC, b/d/a Valley Vista ("Valley Vista"), filed a letter with the Court regarding five outstanding discovery issues. (Doc. 40; Doc. 41). On November 9, 2022, counsel for Plaintiff Metz Culinary Management, Inc. ("Metz"), filed a letter with the Court in response to Valley Vista's letter (Doc. 42). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). (Doc. 16). The Court will address each of Valley Vista's outstanding discovery requests in turn.

I. **STANDARD OF REVIEW**

Federal courts have broad discretion to determine the scope of discovery and to manage the discovery process. *See Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987) ("The conduct of discovery is a matter for the discretion of the district court and its decisions will be disturbed only upon a showing of an abuse of this discretion."). In the Third Circuit, "it is well recognized that the federal rules allow broad and liberal discovery." *Pacitti v. Macy's*, 193 F.3d 766, 777-78 (3d Cir. 1999).

Federal Rule of Civil Procedure 37 governs motions to compel discovery, and "[t]he scope of what type of discovery may be compelled under Rule 37 is defined, in turn, by Rule

26(b)(1) of the Federal Rule of Civil Procedure." *Brewer v. Berks Cty. Sheriff*, No. 13-5763, 2015 WL 13620425, at *2 (E.D. Pa. Oct. 5, 2015) (quoting *Breslin v. Dickinson Twp.*, No. 09-1396, 2011 WL 1577840 (M.D. Pa. Apr. 26, 2011)). Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C) provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(1)(C); *see Mayo v. City of Scranton*, No. 3:10-CV-935, At *3 (M.D. Pa. Feb. 21, 2012).

When deciding a motion to compel, "[t]he moving party bears the initial burden to prove that the requested discovery falls within the scope of discovery as defined by Rule 26(b)(1)." *Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019). "If the moving party meets this initial burden, the burden then shifts to the opposing party to demonstrate that the requested discovery (i) does not fall within the scope of discovery contemplated by Rule 26(b)(1), or (ii) is not sufficiently relevant to justify the burden of producing the information." *Atkinson*, 414 F.Supp.3d at 744 (citation omitted). Discovery is governed by Rule 26, which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

"Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on, any issue that is or may be in the case.'" *United States ex rel. Bergman v. Abbott Labs.*, No. 09-4264, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Funds v. Sanders*, 437 U.S. 340, 351 (1978)). The scope of discovery is broad, but it is not unlimited. *See Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). Finally, discovery should not serve as a fishing expedition. *See Upshaw v. Janssen Research & Development, LLC*, No. 11-7574, 2014 WL 1244047, at * 3 (E.D. Pa. Mar. 26, 2014); Fed. R. Civ. P. 26(b)(1).

II. **DISCUSSION**

   A. OBJECTIONS, GENERALLY

First, Valley Vista challenges Metz's objections to Valley Vista's discovery requests, arguing that the "non-specific objections are procedurally and substantively inadequate and serve as a waiver of any additional objections Metz may attempt to assert." (Doc. 40, at 1); *see, e.g.*, (Doc. 41, at 2) ("Metz further objects to this interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence."). Metz contends its answers and objections, provided on April 4, 2022, were timely, properly preserved, and not waived. (Doc. 42, at 2). As to Valley Vista's contention that the discovery responses are not sufficiently specific, Metz asserts that both its April 4, 2022, answers to the discovery requests and August 23, 2022, supplements "make it clear that the information sought by Valley Vista regarding the identify of all of Metz's clients and the PPP loan are privileged, not relevant to the claims at issue and nor proportional to the needs of the case." (Doc. 40, at 2).

It is well settled that the duty to "provide reasoning and specificity with each objection," falls upon the party objecting to discovery requests. *Koresko v. Bleiweis*, No. CIV.A. 04-00769, 2004 WL 2203713, at *4 (E.D. Pa. Sept. 27, 2004). Courts in the Third Circuit "have always held that a privilege log is required to assert objections on the basis of privilege and that boilerplate or general obligations are disfavored and do not preserve an objection." *Reynolds v. Slippery Rock Univ. of PA,* No. 18-1571, 2021 WL 796029, at *5 (W.D. Pa. Mar. 2, 2021); *see Graham v. Progressive Direct Ins. Co.*, No. CV 09-969, 2010 WL 11469535, at *4 (W.D. Pa. Nov. 1, 2010) ("Rule 26(b)(5)(A)(ii) requires that a party raising a privilege as a defense to production do so in a privilege log . . . . The purpose of the privilege log is to allow opposing counsel and, if necessary, the court to determine the basis of the claim.") (internal quotation marks and citations omitted); *Fuhs v. McLachlan Drilling Co.*, No. CV 16-376, 2018 WL 5312760, at *22 (W.D. Pa. Oct. 26, 2018) ("the use of boilerplate objections is a disfavored practice and boilerplate objections should not be used for the purposes of delaying responses to legitimate requests while evaluating a potential privilege or to forestall the filing of a motion to compel by the opposing party"). "A party's threadbare and conclusory invocations of privilege are insufficient." *UPMC v. CBIZ, Inc.*, No. 3:16-CV-204, 2018 WL 1542423, at *5 (W.D. Pa. Mar. 29, 2018) (internal quotation marks and citation omitted); *see also American Civil Liberties Union v. Gonzales,* 237 F.R.D. 120, 131 (E.D. Pa. 2006) ("general objections to an entire set of interrogatories is improper"); *Parisi v. State Farm Mut. Auto. Ins. Co.*, No. 3:16-CV-179, 2017 WL 4403326, at *1 (W.D. Pa. Oct. 2, 2017) ("The person resisting discovery must explain with specificity why discovery is inappropriate; the boilerplate litany that the discovery sought is overly broad, burdensome, oppressive, vague, or irrelevant is insufficient."). "Rather, claims of privilege 'must be asserted document by document, rather

than as a single, blanket assertion.'" *UPMC*, 2018 WL 1542423, at \*5 (quoting *United Sates v. Rockwell Int'l*, 897 F.2d 1255, 1265 (3d Cir. 1990)).

The Court finds that Metz's answers and objections to the discovery requests are timely, properly preserved, and not waived. First, the timeliness of the responses to the discovery requests is not contested. (Doc. 40, at 1; Doc. 42, at 2). Second, Metz provided sufficiently specific arguments for each of its objections in the response to the discovery requests, such that there is a sufficient basis for withholding relevant discovery from Valley Vista. Therefore, Metz's objections are sustained. However, Metz is directed to provide a privilege log asserting any of its objections to each request and as applying to each document, rather than as a general, blanket assertions.

B. Metz's alleged failure to attach a signed verification to its interrogatory responses.

Second, Valley Vista asserts that only counsel for Metz signed its interrogatory responses, in violation of Fed. R. Civ. P. 33(b). (Doc. 40, at 2). Federal Rule of Civil Procedure 33(b) provides, in part, that interrogatories must be answered "by the party to whom they are directed", "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath", and "[t]he person who makes the answers must sign them." Fed. R. Civ. P. 33(b)(1)(A), (b)(3), (b)(5). Rule 26(g)(2) of the Federal Rules of Civil Procedure also imposes a "signature requirement" on an attorney or party responding to discovery. *See* Fed. R. Civ. P. 26(g). With respect to counsel, their signature on discovery documents constitutes a certification "that to the best of the person's knowledge, information, and belief, formed after a reasonable inquiry" that at the time the request, response, or objection was made, it is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law; (ii) not interposed for any improper purpose, such as

to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

Fed. R. Civ. P. 26(g)(1)(B).

Metz should provide a verification for its responses within the time set forth in the Order filed concurrently with this memorandum.

C. INTERROGATORY NO. 6

Third, in Interrogatory Number 6, Valley Vista requests Metz "[i]dentify all customers of Metz from January 2017 to the present." (Doc. 41, at 2). In response, Metz stated:

> Metz objects to this interrogatory to the extent that it seeks information in anticipation of litigation or for trial by Metz or its attorneys, agents or representatives. Metz further objects to this interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Metz further objects to this document request to the extent that it seeks privileged or confidential information. Metz reserves the right to supplement this response prior to trial in accordance with the Rules of Civil Procedure.

(Doc. 41, at 2).

In its letter to the Court, Valley Vista contends "whether Metz treated Valley Vista the same as other customers with cost-plus contracts is relevant, and Valley Vista can agree to limit its request to that subset of customers." (Doc. 40, at 3). In opposition, Metz argues that Court should sustain its objection because "[n]one of Metz's other customers are parties to the agreement between Valley Vista and Metz and, therefore, whether or not the agreement between the parties is similar or different that other 'cost-plus' contracts between Metz and Metz's other customers is totally irrelevant to the parties dueling breach of contract claims -- none of which involved any of Metz's other customers." (Doc. 42, at 3).

Metz's objection to Interrogatory Number 6 is sustained. Valley Vista fails to show that this interrogatory is relevant to the claims and defenses in this matter. As Metz explains,

the cost-plus contract between the parties provides that "Valley Vista agree to a management fee plus reimbursement of exposes in exchange for Metz supplying labor, equipment and supplies necessary to provide food services to Valley Vista." (Doc. 42, at 3). Whether Metz has other customers with cost-plus contracts is not relevant to the claims in this action or proportional to the needs in the case. *See Atkinson*, 414 F.Supp.3d at 744. Accordingly, Metz's objection to Interrogatory Number 6 is sustained.

### D. INTERROGATORY NOS. 7-11; REQUEST FOR PRODUCTION NOS. 8-15

In Interrogatory Numbers 7 through 11, Valley Vista requests the following:

7. Identify each and every vendor from whom you purchased supplies, equipment, food, and any other item pursuant to the Contract with Valley Vista.

8. Identify each and every individual who performed work or provided services to Valley Vista pursuant to the Contract at any point since January 1, 2017.

9. For each individual in your answer to the preceding interrogatory, state the beginning and end dates of his/her employment and whether he/she provided work or services to any entity other than Valley Vista during his/her employment with Metz.

10. For each and every invoice Metz submitted to Valley Vista from January 1, 2017 through October 2020, itemize each and every cost and expenses reflected in the total amount due under the invoice.

11. Identify each and every payment Metz made for costs it incurred in providing services under the Contract from January 1, 2017 through October 2020, including the method of payment; the date on which it was paid; the vendor, individual, or other entity to whom it was paid; and the services, goods, labor, or other cost the payment was for.

(Doc. 41, at 2-3).

In response, Metz made the same objection to each of the above mentioned interrogatories:

> Metz objects to this interrogatory to the extent that it seeks information in anticipation of litigation or for trial by Metz or its attorneys, agents or representatives. Metz further objects to this interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Metz reserves the right to supplement this response prior to trial in accordance with the Rules of

Civil Procedure. Subject to and without waiver of the foregoing objections, Metz responds as follows: See Metz's responses to Defendant's requests for production of documents.

(Doc. 41, at 2-3).

In Request for Production Numbers 8 through 15, Valley Vista requests the following:

8. All documents and communications concerning, reflecting, or supporting all costs, budgets, or expenses that you billed, invoiced, or otherwise submitted to Valley Vista pursuant to the Contract since January 1, 2017.

9. All documents and communications concerning or reflecting Metz's actual costs incurred to operate and manage Valley Vista's food services from January 1, 2017 through October 2020.

10. All documents and communications concerning or reflecting Metz's actual costs incurred to operate and manage Valley Vista's housekeeping from January 1, 2017 through October 2020.

11. All documents and communications concerning or reflecting Metz's actual costs incurred to operate and manage Valley Vista's linen distribution programs from January 1, 2017 through October 2020.

12. All documents and communications concerning or reflecting the payroll and/or labor costs Metz charged, billed, or invoiced to Valley Vista from January 1, 2017 through October 2020.

13. All documents and communications concerning or reflecting all wages, benefits, and any other payments or remuneration that Metz paid, from January 1, 2017 through October 2020, to employees and/or contractors who provided work or services to Valley Vista pursuant to the Contract.

14. All documents and communications, including but not limited to invoices and receipts, concerning or reflecting costs paid by Metz from January 1, 2017 through October 2020 for food, supplies, materials, personnel, technology, services, and any other item listed on Schedule A of the Contract, in relation to its provision of services under the Contract.

15. All documents and communications concerning or reflecting payments Valley Vista made to Metz under the Contract.

(Doc. 41, at 4-6).

In response, Metz made the same objection as follows:

Metz objects to this document request to the extent that it seeks documents and tangible things in anticipation of litigation or for trial by Metz or its attorneys,

- 8 -

agents or representatives. Metz further objects to this document request to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Metz reserves the right to supplement this response prior to trial in accordance with the Rules of Civil Procedure. Subject to and without waiver of the foregoing objections, Metz responds as follows: See attached Bates 59-103, 239-257, 258-274, 275-280.

(Doc. 41, at 4-6).

In the letter filed with the Court, Valley Vista requests "[a]ccounting documents allowing Valley Vista to confirm the accuracy of Metz's charges to Valley Vista in light of their cost-plus contract, including information and documents about vendors and their invoices." (Doc. 40, at 2). Valley Vista contends it is "entitled to independently confirm the accuracy of Metz's charges" in order to ascertain whether it has been overcharged. (Doc. 40, at 3). In opposition, Metz maintains that "[n]one of Metz's other customers are parties to the agreement between Valley Vista and Metz and, therefore, Valley Vista has no rational need to know the names of all of Metz's clients." (Doc. 42, at 3). Furthermore, Metz argues that "whether or not the agreement between the parties is similar or different than other 'cost-plus' contracts between Metz and Metz's other customers is totally irrelevant to the parties dueling breach of contract claims – none of which involved any of Metz's other customers." (Doc. 42, at 3). In opposition, Metz contends it has already produced documents sufficient to enable Valley Vista to "independently confirm the accuracy of Metz's charges." (Doc. 42, at 3). Thus, Metz argues that "[t]o require Metz to produce every 'Snickers wrapper' or documentation supporting the more than three (3) years of purchases is the very definition of unduly burdensome." (Doc. 42, at 3). Metz further asserts that Valley Vista may serve a subpoena "upon any one of Metz's identified vendors in the event that Valley Vista insists on pursuing its manufactured claims of improper billing." (Doc. 42, at 3).

Federal Rule of Civil Procedure 33(d) provides as follows:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> > (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogatory party to locate and identify them as readily as the responding party could; and
> >
> > (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.
>
> Fed. R. Civ. P. 33(d)(1-2).

"[W]hen a party files a motion to compel . . . such party must make a *prima facie* showing that the use of Rule 33(d) is somehow inadequate to the task of answering the discovery, whether because the information is not fully contained in the documents, [or] is too difficult to extract . . . ." *S.E.C. v. Elfindepan, S.A.*, 206 F.R.D. 574, 576 (M.D.N.C. 2002); *see generally Versatile Metals, Inc. v. Union Corp.*, Civ. A. No. 85-4085, 1987 WL 7686, at *2 (E.D. Pa. Mar. 10, 1987) ("The party seeking to show that answers to interrogatories are insufficient has the burden of proving that the answers are incomplete, inadequate, or false."). However, Rule 33(d)(2) requires that a party responding to an interrogatory through the production of business records must "[specify] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." The level of specificity required is not trivial and "generally requires an answering party to point to specific documents, by name or bates number, and not pointing the requesting party generally to document productions." *Winn-Dixie Stores, Inc. v. E. Mushroom Mktg. Coop.*, No. CV 15-6480, 2020 WL 13169418, at *1 n.1 (E.D. Pa. Apr. 24, 2020) (quoting *Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 282 (N.D. Tex. 2017)).

Here, Valley Vista contends Metz has failed to provide the requested information, instead offering "only one-page invoices with little more than vaguely described line items" and "general summaries that have little to no evidentiary value without the documents substantiating the numbers." (Doc. 40, at 3; Doc. 41, at 11-13, 15-47, 49-57). According to Metz, it "has provided Valley Vista in excess of two thousand documents, including invoices from 2017 to the present, an account summary, aged trial balances, profit and loss statements, employee compensation, vendor information and vendor payments," as well as Metz's General Accounting Ledger for each monthly invoice at issue and its Vendor Purchase Summary for all years at issue -- 2017 through 2020 . . . .'" (Doc. 42, at 3). Metz maintains that these documents "clearly provide sufficient support for Metz's calculation of damages and detail the itemized categories of costs incurred by Metz in connection with the contract between the parties (e.g. food, disposables, equipment, cleaning, other operating expenses, labor, management costs, etc.)." (Doc. 42, at 3).

Responding to Valley Vista's discovery requests, "pointing the requesting party generally to document production" is precisely what Metz did. Thus, while Metz may exercise its option to answer interrogatory questions through production of business records, it must supplement its answers to conform to the level of specificity required by Rule 33(d)(2). Upon consideration of the documents Metz has produced thus far, it appears to the Court that the discovery requests have been answered sufficiently. Nevertheless, in order to satisfy any outstanding discovery requests and to provide Valley Visa the information it seeks to confirm Metz's invoicing, Metz shall supplement its responses to Interrogatories Numbers 7 through 11 and Request for Production Numbers 8 through 15 by providing Valley Vista with an index that identifies the page and/or bates number on which each responsive document begins. See *Winn-Dixie Stores, Inc.*, 2020 WL 13169418, at *1.

E. INTERROGATORY NOS. 14, 15, 20; REQUEST FOR PRODUCTION NOS. 26-30, 32-39

In Interrogatory Numbers 14, 15, and 20, Valley Vista requests the following:

14. Identify the individual at Metz with the most information regarding Metz's application for the Paycheck Protection Program [("PPP")] Loan received by Metz and the application for forgiveness of the [PPP] Loan received by Metz.

15. Identify the date Metz completed its application for the [PPP] Loan.

20. Identify all Metz employees whose salaries, pay, or benefits were reimbursed or covered through the [PPP] Loan received by Metz.

(Doc. 41, at 3-4).

In response, Metz made the following objection:

Metz objects to this interrogatory to the extent that it seeks information in anticipation of litigation or for trial by Metz or its attorneys, agents or representatives. Metz further objects to this interrogatory to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Metz further objects to this document request to the extent that it seeks privileged or confidential information. Metz reserves the right to supplement this response prior to trial in accordance with the Rules of Civil Procedure

(Doc. 41, at 4).

In Request for Production Numbers 26 through 30 and 32 through 39, Valley Vista requests the following:

26. All documents and communications concerning or relating to Metz's application for a loan through the [PPP], including but not limited to all communication with any financial institution who may have assisted Metz in applying for such a loan.

27. All documents and communications concerning or reflecting Metz's receipt of a loan through, or payments from, the Small Business Administration and/or the U.S. Department of Treasury in relation to the [PPP].

28. All documents and communications concerning, relating to, or reflecting Metz's repayment obligations, if any, under any loan it has received through the [PPP].

29. All documents and communications concerning, relating to, or reflecting how Metz used and accounted for money received through the [PPP].

30. All documents and communications reflecting [PPP] loan repayments that Metz has made.

32. A copy of the [PPP] Loan Forgiveness Application submitted by Metz to the Small Business Administration.

33. Copies of all supporting documents submitted by Metz to the Small Business Administration along with its [PPP] Loan Forgiveness Application.

34. All documents evidencing the use of all [PPP] Loan proceeds by Metz.

35. All correspondence by Metz to the Small Business Administration regarding Metz's [PPP] Loan Forgiveness Application.

36. All correspondence from the Small Business Administration to Metz regarding Metz's [PPP] Loan Forgiveness Application.

37. All correspondence by Metz to Metz' PPP Loan lender regarding Metz's [PPP] Loan Forgiveness Application.

38. All correspondence from Metz' PPP Loan lender to Metz regarding Metz's [PPP] Loan Forgiveness Application.

39. All documentation evidencing forgiveness of Metz's [PPP] Loan.

(Doc. 41, at 6-9).

In response, Metz makes the following objection:

> Metz objects to this document request to the extent that it seeks documents and tangible things in anticipation of litigation or for trial by Metz or its attorneys, agents or representatives. Metz further objects to this document request to the extent that it is vague, overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Metz further objects to this document request to the extent that it seeks privileged or confidential information.

(Doc. 41, at 7-9).

In its letter filed with the Court, Valley Vista requests "[i]nformation and documents associated with Metz's receipt of at least $10,000,000 in federal Paycheck Protection Program ("PPP") money given to Metz for labor costs associated with labor it provides to its customers, including Valley Vista." (Doc. 40, at 2). The PPP was created by Congress to assist small

businesses facing hardship during the COVID-19 global pandemic. *Albino Constr. Co. v. Wells Fargo Bank, Nat'l Ass'n*, No. CV 21-35, 2021 WL 2529811, at *1 (E.D. Pa. June 17, 2021).

Relevant to its request, Valley Vista explains the following:

> the parties entered into a cost-plus contract by which Metz provided food services, housekeeping, and linen distribution programs to Valley Vista's inpatient treatment programs. Per the contract, Valley Vista agreed to pay Metz's actual, incurred costs to provide these services, plus a management and administrative fee. A number of compensation provisions are relevant Paragraph 2.1 states that '[a]ll costs of operating the Program and rendering the Services shall be borne by [Valley Vista].' . . . It further states that '[Valley Vista] shall be entitled to receive any net profits generated by the operation of the Program. However, should there be losses in the operation of the Program, such losses shall be borne by [Valley Vista].'

(Doc. 40, at 2).

Valley Vista asserts that to the extent the parties' contract "results in a profit for any reason, including through free taxpayer money for labor costs otherwise invoiced to Valley Vista, Valley Vista gets the benefit of that entire profit." (Doc. 40, at 2). Valley Vista contends "[d]ue to the PPP windfall specifically earmarked for Metz's labor costs for Valley Vista, the actual cost of the labor borne by Valley Vista must be accordingly reduced, before even considering the fact that Metz is attempting to take profits dur Valley Vista under the Contract." (Doc. 40, at 4). Valley Vista acknowledges that Metz's suggested a deposition is appropriate to determine relevancy, but Valley Vista still requests the above-mentioned PPP loan-related documentation to "confirm the veracity of that testimony via documents readily available from both Metz and the lender who processed the loan." (Doc. 40, at 4).

In opposition, Metz argues that the discovery request is not discoverable because Metz's application for PPP funds did not include any payroll for any cost-plus contracts, including the contract at issue here, and the express terms of the parties' contract is different than the PPP statutory scheme. (Doc. 42, at 6-7). Further, Metz contends there is no provision in the parties' contract that obligates Metz to credit Valley Vista for the forgivable PPP loan

obtained by Metz for payroll expenses "totally divorced from the contract between the parties." (Doc. 42, at 7). Finally, Metz reiterates its "willingness and desire for an evidentiary hearing to provide sworn testimony regarding the threshold fact that Metz excluded cost-plus payroll figures from its application for PPP funds and used only profit and loss contracts to support its application." (Doc. 42, at 8).

Whether PPP loan documents are relevant in civil matters is a relatively new issue before courts and a case-specific one. Federal courts have determined that information regarding PPP loans is relevant in certain cases and irrelevant in others. *See e.g. O'Bryan v. Joe Taylor Restoration, Inc.*, No. 20-CV-80993, 2021 WL 633948, at *1-*2 (S.D. Fla. Feb. 18, 2021), *objections overruled*, No. 9:20-CV-80993-WPD, 2021 WL 2000368 (S.D. Fla. Apr. 19, 2021) (finding plaintiff's request for information related to defendant's use of PPP funds irrelevant, disproportionate, and overbroad in claim for unpaid sick leave, because defendant's use of funds would have no bearing on whether plaintiff was eligible to receive sick pay); *Barback v. Fisher*, No. CV 20-515-SDD-EWD, 2022 WL 965914, at *8 (M.D. La. Mar. 30, 2022) (finding plaintiff's request regarding whether defendant applied for or received PPP funds and statements defendant made about defendant's financial position and operating expenses during the application process was relevant where defendant claimed it fired plaintiff for the non-retaliatory purpose of having to lower its operating expenses); *Taylor v. HD & Assocs., LLC*, No. CV 19-10635, 2020 WL 6708383, at *3 (E.D. La. Nov. 16, 2020) (finding PPP loan application irrelevant in Fair Labor Standards Act case where actions regarding the PPP loan application took place after plaintiffs stopped working for defendant and the application and admissions within had no bearing on whether plaintiffs were employees or independent contractors); *Arthur N. Rupe Found. v. Fresh Acquisitions, LLC*, No. 5:20-CV-130-H, 2021 WL 3660762, at *1 (N.D. Tex. Mar. 29, 2021) (finding COVID relief loan applications irrelevant

in breach of contract case where the only issues remaining were whether defendant-landlord failed to properly maintain and repair the premises and the calculation of plaintiff-tenant's damages); *Petconnect Rescue, Inc. v. Salinas*, No. 20-CV-00527-LL-DEB, 2022 WL 448416, at *5 (S.D. Cal. Feb. 14, 2022) (finding COVID relief fund documents and applications relevant "to the limited extent" they showed defendant's owners and businesses with common management and ordering defendant to product the documents and application to the extent they show that limited relevant information).

Here, to support its contention that the PPP loan application documents are not discoverable, Metz relies on *Taylor v. HD & Assocs., LLC,* No. CV 19-10635, 2020 WL 6708383, at *1-5 (E.D. La. Nov. 16, 2020). (Doc. 42, at 6). In *Taylor*, the plaintiffs alleged violations of the Fair Labor Standards Act for failure of the defendant to pay for hours worked and overtime wages. *Taylor,* 2020 WL 6708383, at *1. After learning that the defendant included independent contractor technicians in its application for PPP loans, the plaintiffs served discovery regarding the PPP loan application. *Taylor,* 2020 WL 6708383, at *1. The defendant refused to produce the requested information and the plaintiffs filed a motion to compel, which the United States District Court for the Eastern District of Louisiana denied finding that the PPP loan information was "not relevant to the present litigation." *Taylor,* 2020 WL 6708383, at *2-4. Finding that the PPP loan information sought by the plaintiffs was not relevant to the litigation, the court explained:

> *The loan application does not include any current plaintiffs* and all of HD's actions with regard to the PPP loan took place after the plaintiffs ceased to work for them. Moreover, the PPP is a different statutory scheme than the FLSA. As HD points out, the SBA indicated that a company could obtain a PPP loan for its 1099 independent contractors. Thus, HD's submission of an application for its current independent contractors . . . does not amount to any kind of admission that those independent contractors are employees under the FLSA. In any event, HD has stipulated that it included these independent contractors in its PPP loan application. The PPP loan documentation and details about

> PPP loan payments are completely irrelevant to the issue of the plaintiffs' employee status under the FLSA.

*Taylor*, 2020 WL 6708383, at *4-5 (emphasis added).

Metz's objections to the above-mentioned discovery requests are sustained. The Court agrees with Metz that Valley Vista fails to identify any provision of the cost-plus contract between the parties that obligates Metz to credit Valley Vista for the forgivable PPP loan it received for payroll expenses. The contract between the parties provides that Metz must pay Valley Vista "profits generated by the *operation* of the Program;" not that Metz must pay Valley Vista any amount it receives by operation of the company itself. (Doc. 40, at 2). The Court finds the following argument by Metz persuasive: "A loan to Metz that was not supported by or based on the Valley Vista payroll or earmarked for use at Valley Vista has nothing to do with any profits generated by the operations at Valley Vista and, thus, this contractual term has absolutely no relevance to the PPP Program." (Doc. 42, at 8). The PPP loan Metz received cannot be construed as a profit belonging to Valley Vista and is, therefore, irrelevant to the present lawsuit as the PPP loan is entirely irrelevant to the terms of the contract or relationship between the parties.

Accordingly, Metz's objections to Interrogatory Numbers 8 through 15 and Request for Production numbers 26 through 30 and 32 through 39 are sustained.

### III.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that:

1. Metz shall supplement its responses to Interrogatory Numbers 7 through 11 and Request for Production Numbers 8 through 15. If Metz responds to the discovery requests by producing business records pursuant to Rule 33(d), Metz must provide Valley Vista with an index that identifies the page and/or bates number on which each responsive document begins.

2. Metz's objections to Interrogatory Number 6, 14, 15, and 20 and Request for Production Numbers 26 through 30 and 32 through 39 are **SUSTAINED**.

An appropriate Order follows.

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**Chief United States Magistrate Judge**